IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**BRUCE LEE BOARDMAN**,

　　　**Movant,**

v.　　　　　　　　　　　　　　**Case No. 2:21-cv-00006**
　　　　　　　　　　　　　　　**Criminal Case No. 2:18-cr-00207-1**

**UNITED STATES OF AMERICA,**

　　　**Respondent.**


**PROPOSED FINDINGS AND RECOMMENDATIONS**

On September 24, 2020, Movant Bruce Lee Boardman ("Boardman") submitted a *pro se* Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to Title 28, United States Code, Section 2255. (ECF No. 103).[1] Pending before the Court are Boardman's § 2255 motion as well as Respondent's Response and request for dismissal. (ECF No. 110). This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having determined from a thorough review of the record that Boardman clearly is not entitled to relief under 28 U.S.C. § 2255, and credibility does not play a role in resolving Boardman's claims, an evidentiary hearing is unnecessary. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970). For the reasons that follow, the undersigned

---

[1] The citations in this PF&R reference Movant's criminal case: *United States v. Boardman et al.*, No. 2:18-cr-00207-1 (S.D.W. Va. Aug. 16, 2019).

respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Respondent's request for dismissal, (ECF No. 110); **DENY** Boardman's § 2255 motion, (ECF No. 103); and **DISMISS** this case, removing it from the docket of the Court.

## I.    Factual and Procedural History

### A.    Conviction and Sentence

On September 26, 2018, a grand jury in the Southern District of West Virginia indicted Boardman and his codefendant, Shaine Dingess, on several counts related to drug trafficking. (ECF No. 1). Boardman's original counsel from the Federal Public Defender's Office moved to withdraw due to a conflict of interest, and on January 14, 2019, Gregory Campbell ("defense counsel") was appointed to represent Boardman. (ECF Nos. 38, 42). On April 5, 2019, Boardman appeared before the Court and pled guilty to Count One of the indictment, which charged him with possession with intent to distribute methamphetamine in violation of 18 U.S.C. § 841(a)(1), and Count Five, for knowingly using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). (ECF No. 56). As part of his plea agreement, Boardman agreed to waive his right to appeal his conviction or sentence except on the basis of ineffective assistance of counsel or unless he was sentenced beyond the statutory maximum for his crime. (ECF No. 58 at 8–9). He also provided a stipulation of facts in which he admitted to possessing 50 grams of methamphetamine during a traffic stop and later brandishing a gun during a drug exchange involving a confidential informant. (*Id.* at 12).

On August 12, 2019, Boardman appeared for sentencing. (ECF No. 72). The Court recessed to allow for further development of evidence and argument from the parties concerning the drug quantities applicable to Boardman's conduct for purposes of calculating a sentence range under the United States Sentencing Guidelines ("USSG").

(ECF No. 93 at 19–20). On August 14, 2019, the parties reconvened to finish Boardman's sentencing hearing. (ECF No. 75). At the hearing, the Court found that Jones's statements concerning quantities of drugs sold to Boardman were "more credible" than the argument advanced by the defense. (ECF No. 94 at 28). The Court also found that, based on Boardman's drug trafficking in the jail, using a corrupt corrections officer, while incarcerated before sentencing, he was not allowed a deduction in his USSG range for acceptance of responsibility. The Court nevertheless decided to vary down one offense level in recognition of Boardman's guilty plea. (*Id.* at 44). Boardman's total offense level was determined to be 31, with a criminal history category of VI, resulting in a USSG sentence range of 188 to 235 months' imprisonment for Count One and 60 months for Count Five. (*Id.*). Ultimately, Boardman was sentenced to consecutive terms of 188 months' imprisonment on Count One and 60 months' imprisonment on Count Five, followed by a period of supervised release. (ECF No. 79).

### B.    *Appeal to the Fourth Circuit*

On August 21, 2019, Boardman, through defense counsel, filed a timely notice of appeal to the Fourth Circuit Court of Appeals ("Fourth Circuit"). (ECF No. 82). In the docketing statement, Boardman raised objections to the attribution of 1,400 grams of methamphetamine to his relevant conduct. *United States v. Boardman*, No. 19-4606 (4th Cir. Feb. 20, 2020) ("*Boardman II*"), ECF No. 4 at 2. However, in his supporting brief, defense counsel took a different approach, arguing that Boardman's sentence of 248 months was unreasonable as it is "greater than necessary to advance the purposes of sentencing" according to the factors contained in 18 U.S.C. § 3553(a). *Id.*, ECF No. 17 at 7–9. In its response, the Government argued that "Boardman waived his right to appeal the reasonableness of the sentence by virtue of signing a plea agreement with appellate

waivers," and that the sentence was reasonable, pointing out that Boardman received a downward variance from the Court. *Id.*, ECF No. 24 at 14–19. On February 20, 2020, the Fourth Circuit granted the Government's motion to dismiss Boardman's appeal and issued its mandate on March 13, 2020. *Id.*, ECF Nos. 26, 27, 29.

### C.    *Motion under § 2255*

#### 1.    *Boardman's motion*

On January 5, 2021, Boardman filed the instant motion under § 2255. (ECF No. 103). In his motion, Boardman asserts nine grounds for relief. In Ground One, Boardman contends that defense counsel was ineffective because he "did not retrieve, review, and submit critical evidence from [his] previous attorney." (*Id.* at 4). Boardman claims that his first attorney had investigated the issue of whether "the Nitro PD was out of jurisdiction as to Count 1," yet defense counsel failed to file appropriate motions concerning the evidence obtained despite Boardman's request that he do so. (*Id.*).

In Ground Two, Boardman argues that defense counsel urged him to plead guilty and advised that by so doing the "Government wouldn't use 'ice law'" against him. (*Id.* at 5). Although he later wished to abandon the guilty plea, defense counsel convinced him to go forward. Contrary to defense counsel's assurances, the Government used "ice law" to enhance Boardman's sentence. (*Id.*). In Ground Three, Boardman alleges that defense counsel did not file motions to suppress sentencing testimony regarding statements made by a defendant in a related case, Avonte Jones ("Jones"), although Boardman requested counsel to do so. (*Id.* at 6). In Ground Four, Boardman asserts that defense counsel refused to show video of law enforcement agents threatening his safety when he refused to cooperate in an investigation of a separate matter. (*Id.* at 8). He claims he was approached by multiple agents who intimated that if he did not cooperate with their

4

investigation then "they would use deception to make [him] appear as a cooperator to the Jails population so [he] would be harmed by inmates." (*Id.*). When questioning one of the agents at sentencing, Boardman contends defense counsel refused to play video that captured the incident. (*Id.*).

In Ground Five, Boardman contends that the presentence investigation report ("PSR") was delivered after the court-ordered deadline, limiting the time that defense counsel had to prepare. (*Id.* at 13). In Ground Six, he alleges that defense counsel "failed to submit final objections to the PSR/Failed to even prepare the court document." (*Id.*). He asserts that he wished to object to the PSR's representation of the drug weights involved in the offense, but defense counsel did not properly file objections, thus depriving him of "critical decisions." (*Id.*). In Ground Seven, Boardman asserts that the Government induced Benjamin Mooney, a witness at Boardman's sentencing hearing, to commit perjury by testifying falsely that Boardman used Mooney's garage to distribute drugs and always carried a gun in an effort to add weight to his charges and defame his character. (*Id.* at 14).

In Ground Eight, Boardman alleges that defense counsel refused to move to suppress prior testimony by Jones when Jones refused to testify at the sentencing hearing,  and he allowed a law enforcement agent "to testify for [Jones]" without Boardman's acquiescence. (*Id.* at 15). Boardman asserts that defense counsel advised that they had only agreed that "it was evidence presented in a copied statement from Jones." (*Id.*). Boardman states that he stopped the hearing and asked defense counsel to resign from his case and that he wished to abandon the plea, but defense counsel asked Boardman to trust him and promised that Boardman would only receive a 10–12 year sentence. (*Id.* at 16). He contends that defense counsel did not discuss the sentencing

guidelines with him "because he didn't know how," and he would not have entered a guilty plea if not for defense counsel's bad decisions. (*Id.*).

In Ground Nine, Boardman asserts that defense counsel filed a direct appeal without his knowledge or input. (*Id.*). Despite defense counsel's understanding that Boardman wished to be involved in the appellate process, defense counsel did not consult with Boardman and would not accept his calls. Boardman emphasizes that he only learned that an appeal had been filed after he received notice of its denial. (*Id.* at 16–17). He notes that the Fourth Circuit called defense counsel's "attempt at a direct appeal a barebones approach." (*Id.* at 17).

### 2. *Defense counsel's affidavit*

Respondent moved for a court order requiring defense counsel to provide information about the claims of ineffective assistance in Boardman's motion, which the undersigned granted. (ECF Nos. 107, 108). In response to the Court's order, defense counsel filed an affidavit. (ECF No. 109). He denies preventing Boardman from participating in his appeal, stating that he "informed Boardman while he was incarcerated at USP Atlanta that 'If you have any questions please let me know. I have the sentencing transcripts and I am working on our brief to the Fourth Circuit Court of Appeals. Write me if you have questions.'" (*Id.* at 1).

As to Ground One concerning the supposed failure to review previous counsel's file and challenge law enforcement's jurisdiction, defense counsel indicates that he obtained the complete file from Boardman's first attorney. Defense counsel states that he reviewed the file, but when Boardman pled guilty, the issue concerning the weapon became moot. (*Id.* at 2). Counsel added that he explained to Boardman that a guilty plea would waive most pretrial defects, including a claim of illegal search and seizure. As to Ground Two,

6

defense counsel admits that he advised Boardman that he believed a guilty plea was in Boardman's best interest, but disputes that the government used "ice law" against Boardman at sentencing. (*Id.*). Regarding Ground Three, defense counsel denies the allegations, noting that Jones's statements "were given under oath to a grand jury" and that "[b]ased on conversations with Boardman it was determined that the best thing to do was not have [Jones] on the witness stand." (*Id.*). Defense counsel generally denies the allegations in Grounds Four, Five, and Six. (*Id.* at 2–3). As to Ground Seven, defense counsel denies having any knowledge of the Government's use of a perjurious witness at Boardman's sentencing. (*Id.* at 3). He generally denies the allegations in Grounds Eight and Nine. (*Id.*).

### 3. *Respondent's response and request for dismissal*

On April 5, 2021, Respondent filed a response in opposition to Boardman's motion. (ECF No. 110). Relying on defense counsel's affidavit, as well as Boardman's answers at his guilty plea hearing and the record of the criminal proceedings, Respondent advances that Boardman's motion should be denied. (*Id.* at 8). In a footnote, Respondent also maintains that any of Boardman's substantive claims not raised in appeal "should be waived." (*Id.*). Because Boardman affirmed at his guilty plea hearing that he understood that the Court would only determine the applicable guidelines range after the preparation of a presentence report and engaged him in a proper Rule 11 plea colloquy, Respondent maintains that he "fails to offer any support that his lawyer was ineffective." (*Id.* at 9–10).

Next, Respondent argues that defense counsel's affidavit provides further evidence that defense counsel was not ineffective. (*Id.* at 10). Respondent simply repeats defense counsel's statements and concludes that because defense counsel denies Boardman's allegations, he "has demonstrated why Boardman's ineffective assistance of counsel

claims are not supported by record facts or the law." (*Id.* at 12–13). Respondent posits that Boardman's motion is "based upon his dissatisfaction with his sentence rather than any meritorious grounds" and repeats its assertions that Boardman fails to state a claim for relief. (*Id.* at 13). It claims that a hearing is unnecessary. (*Id.* at 14).

### 4. *Boardman's reply*

On May 10, 2021, Boardman replied to Respondent's response. (ECF No. 112). He cites extensively to parts of the existing record in order to support his claims, noting that the prosecution in his case called it "sloppy and messy" at his sentencing hearing. (*Id.* at 1). Regarding Ground One, he acknowledges that defense counsel asserted that he obtained the file from his previous attorney but denies that defense counsel ever reviewed it with him even though he was "adamant that [he] wanted to discuss it and enter it into evidence," because "the file contained [an] affidavit from the owner of the firearms clearing [Boardman] of knowledge of the firearms even being in the vehicle." (*Id.* at 2). Boardman claims that information in the file also established that the arresting agency was out of its jurisdiction when the arrest was made. Boardman asserts that defense counsel's lack of communication regarding the file contents can be proven by examining defense counsel's "CJA voucher and record of materials he provided." (*Id.*).

Boardman rejects Respondent's argument concerning Ground Two, detailing that defense counsel advised him that the plea agreement required the Government to "leave all meth as 'meth mixture' in regard to sentencing computations and conversions at a ratio of appx 2kg pr gram of meth," which is substantiated by defense counsel's statements at Boardman's sentencing hearing. (*Id.*). However, he provides that some of the meth mixture "was converted at a rate of almost 15kg per gram of meth," which added 720 kilograms rather than 92 kilograms for sentencing, so, contrary to Respondent's

argument, "ice law" was used to enhance his sentence. (*Id.* at 2–3). Once again, Boardman relies on information in the record to support his contention.

As to Ground Three, Boardman reiterates that he did not agree to allow someone else to testify in place of Jones and did not waive his right to examine Jones under oath. (*Id.* at 3–4). He notes that Jones's testimony was the most significant evidence of the drug weights involved for sentencing but his testimony was false. (*Id.* at 4). Regarding Count Four, Boardman reiterates that defense counsel possessed video of the threatening encounter he had with agents investigating the criminal activity of a correctional officer, John Roach, but defense counsel refused to show the video despite Boardman's urging. (*Id.*). He contends that defense counsel's failure to properly defend against the accusations caused him prejudice because he lost his reduction in sentencing points for acceptance of responsibility. (*Id.* at 4–5). Boardman notes that Respondent made no arguments relevant to Grounds Five and Six, and he reiterates that his counsel admittedly failed to file objections to disputed issues in the PSR and alleges that his "PSR wasn't mailed till its due date." (*Id.* at 5).

As to Ground Seven, Boardman reiterates his claim that Benjamin Mooney's testimony was clearly false, but was used to show Boardman as a violent drug supplier, causing him prejudice. (*Id.* at 6). Regarding Ground Nine, Boardman agrees that defense counsel wrote him a letter providing that he would work on an appeal but adds that he told defense counsel over the phone that he "wanted to work directly with [defense counsel]." (*Id.* at 5). His subsequent attempts to contact defense counsel went unanswered, and he was unaware of the progress of the appeal until he learned of its denial. (*Id.*). Boardman restates that he had wished to void the plea agreement and guilty plea, but defense counsel persuaded him to follow through with it by insisting that the

Court would not sentence him to more than 12 years. (*Id.* at 6). He asks the Court to consider his claims and allow him another chance to defend his case with effective counsel. (*Id.*).

## II.    <u>Standard of Review</u>

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence that was entered in a separate proceeding. To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. "A motion collaterally attacking a prisoner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." *Sutton v. United States of America,* No. CRIM.A. 2:02CR65, Civ. A. 2:05CV91, 2006 WL 36859, at *2 (E.D. Va. Jan. 4, 2006). Pursuant to the Rules Governing Section 2255 Proceedings for the United States District Courts ("Rules"), the court should conduct a preliminary review of the motion. *See* Rule 4. The court may then order the respondent to answer the motion and may authorize the parties to conduct discovery; the court may also direct the parties to expand the record as necessary to properly assess the validity of the motion. *See* Rules 5, 6, & 7. Once these steps are completed, the court must review the answer, transcripts, records of prior proceedings, and any other materials submitted to determine whether an evidentiary hearing on the motion is warranted. *See* Rule 8(a).

The decision of whether to conduct an evidentiary  hearing is generally left to the sound discretion of the district court, although there are "a category of petitions, usually involving credibility, that will require an evidentiary hearing in open court." *United States*

*v. Wright,* 538 Fed. Appx. 237 (4th Cir. 2013) (quoting *Raines,* 423 F.2d at 530); *also United States v. Velascu,* 429 Fed. Appx. 236, 237 (4th Cir. 2011) (noting that when the issue is one of credibility, the court can rarely resolve the issue on the basis of affidavits alone). This is particularly true when "competing sworn statements offer differing factual allegations that 'relate primarily to purported occurrences outside of the courtroom and upon which the record could, therefore, cast no real light.'" *United States v. Underwood,* No. 20-6782, 2022 WL 186054, at *1, n.2 (4th Cir. Jan. 20, 2022) (quoting *United States v. White,* 366 F.3d 291, 302 (4th Cir. 2004)). Nonetheless, the mere presence of conflicting affidavits does not automatically require an evidentiary hearing. When the motions, files, and records in the case conclusively show that the movant is not entitled to relief, the court may deny the § 2255 motion without an evidentiary hearing. *Raines,* 423 F.2d at 529.

## III.   <u>Discussion</u>

### A.   *Effect of Waiver of Collateral Attack Rights*

Boardman executed a waiver of his appellate and collateral attack rights in conjunction with his plea agreement, a provision that was already enforced by the Fourth Circuit when it denied Boardman's appeal in *Boardman II*. After reviewing the plea agreement and the transcript of the Rule 11 proceeding, the Fourth Circuit found that Boardman had knowingly and voluntarily waived his right to appeal when he entered into the plea agreement. *Boardman II*, ECF No. 26. The only exception to the waiver relevant to this action was that Boardman did not waive his right to challenge his conviction and sentence on the ground of ineffective assistance of counsel. It is therefore necessary that, on collateral review, Boardman's claims be limited to those in which he alleges that his counsel was ineffective. The law of the case doctrine "forecloses relitigation of issues

expressly or impliedly decided by the appellate court." *United States v. Bell*, 5 F.3d 64, 66 (4th Cir.1993). Issues decided on direct appeal cannot be resurrected in a § 2255 motion unless there is some favorable, intervening change in the law. *Davis v. United States*, 417 U.S. 333, 342 (1974); *United States v. Walker*, 299 F. App'x 273, 276 (4th Cir.2008). Boardman's allegations in Ground Five challenging the untimeliness of the delivery of the PSR and Ground Seven concerning the Government's use of Benjamin Mooney's testimony at sentencing are subject to this waiver and cannot be considered in a § 2255 motion. Thus, the undersigned **FINDS** that Respondent's motion to dismiss should be granted as to Grounds Five and Seven due to the waiver executed in the plea agreement.

### B.    *Ineffective Assistance of Counsel*

The Sixth Amendment to the United States Constitution guarantees every criminal defendant "the right to the effective assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 680 (1984). Under *Strickland,* a criminal defendant can prove ineffective assistance of counsel by meeting the requirements of a two-pronged test. *Id.* at 687. The defendant carries the burden of satisfying both prongs of the test, and "a failure of proof on either prong ends the matter." *United States v. Roane,* 378 F.3d 382, 404 (4th Cir. 1994).

First, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 687-88. When evaluating counsel's performance under the first prong of *Strickland,* "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Thus, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). The

inquiry under *Strickland* is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter,* 562 U.S. 86, 88 (2011).

Second, the defendant must show that he was actually prejudiced by the ineffective assistance of counsel. *Strickland,* 466 U.S. at 687. To establish actual prejudice from counsel's deficient performance, "[p]etitioner must show that 'counsel made errors so serious that counsel was not functioning as the counsel guaranteed ... by the Sixth Amendment.'" *DeCastro v. Branker,* 642 F.3d 442, 450 (4th Cir. 2011) (citing *Harrington,* 131 S. Ct. at 787)); *see, also, Strickland,* 466 U.S. at 687 (holding that the second prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"). It is insufficient for the defendant "to show that the errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test." *Strickland,* 466 U.S. at 693. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

In the context of a guilty plea, the movant carries a heavy burden under § 2255. By entering a guilty plea, the criminal defendant "has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged." *Tollett v. Henderson,* 411 U.S. 258, 267 (1973). Therefore, a guilty plea "represents a break in the chain of events which has preceded it in the criminal process." *Id*. Statements made during a hearing to accept a guilty plea are afforded a strong presumption of veracity and subsequent attacks that contradict these statements may generally be dismissed as frivolous. *U.S. v. Lemaster,*

403 F.3d 216, 221-222 (4th Cir. 2005). As the Fourth Circuit explained:

> [A] defendant's solemn declarations in open court ... carry a strong
> presumption of verity ... because courts must be able to rely on the
> defendant's statements made under oath during a properly conducted Rule
> 11 plea colloquy. ... Thus, in the absence of extraordinary circumstances, the
> truth of sworn statements made during a Rule 11 colloquy is conclusively
> established, and a district court should, without holding an evidentiary
> hearing, dismiss any § 2255 motion that necessarily relies on allegations
> that contradict the sworn statements.

*Id.* Consequently, a criminal defendant is precluded from raising alleged constitutional deprivations that occurred prior to pleading guilty and "may only attack the voluntary and intelligent character of the guilty plea" by demonstrating that his counsel's performance was inadequate under the Sixth Amendment. *Tollett,* 411 U.S. at 267; *see also Fields v. Attorney General of State of Md.*, 956 F.2d 1290, 1296 (4th Cir. 1992) ("A guilty plea does not bar collateral review of allegations of ineffective assistance of counsel in so far as the alleged ineffectiveness bears on the voluntariness of the guilty plea."). In other words, the movant under § 2255 must not only rebut the presumption that counsel performed within the wide range of reasonable professional competence but must also demonstrate that "there is a reasonable probability that, but for counsel's errors, [movant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985).

As to prejudice at sentencing, Boardman must show a reasonable probability that he would have received a more lenient sentence if not for errors by counsel. *See Glover v. United States*, 531 U.S. 198, 202–04 (2001); *United States v. Russell*, 34 F. App'x 927, 928 (4th Cir.2002). As to his prejudice regarding appellate counsel, Boardman must demonstrate that appellate counsel ignored issues that were clearly stronger than those presented. *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir.2000).

### 1. Voluntariness of Guilty Plea

Significantly, in this case, Boardman does not explicitly and directly challenge the knowing, voluntary nature of his plea. He does state in support of Ground Eight—regarding the testimony of Jones—that he would not have "finished" the plea "if not for the bad decisions pushed upon [him]" by defense counsel. (ECF No. 103 at 16). As Jones's testimony was offered at the sentencing hearing, after Boardman pled guilty, Boardman's assertion does not make sense in the context of Ground Eight. Notwithstanding the lack of a logical bridge between the assertion and the particular challenge raised in Ground Eight, the undersigned examines the question of whether Boardman's plea was knowing and voluntary.

A criminal defendant's guilty plea is only constitutionally valid "to the extent it is voluntary and intelligent." *Bousley v. United States*, 523 U.S. 614, 618 (1998). Therefore, before accepting a guilty plea, a district court must conduct a plea colloquy under Rule 11 of the Federal Rules of Criminal Procedure to determine that the defendant comprehends the nature of the charges to which he is pleading guilty, the maximum possible penalty that he could face, any mandatory minimum penalty for such crime(s), and the rights that he relinquishes by pleading guilty. *Hernandez v. United States*, No. 3:14-CR-82-RJC-8, 2018 WL 3381429, at *6 (W.D.N.C. July 11, 2018) (citing Fed. R. Crim. P. 11(b)(1) and *United States v. DeFusco*, 949 F.2d 114, 116 (4th Cir. 1991)). In addition, the district court must "ensure that the plea is supported by an independent factual basis and is not the result of force, threats, or promises outside the plea agreement." *Id.* (citing Fed. R. Crim. P. 11(b)(2), (3)). "An appropriately conducted Rule 11 proceeding raises a strong presumption that the defendant's plea is final and binding and a defendant's solemn declarations in open court affirming a plea agreement carry a strong presumption of

verity that presents a formidable barrier in any subsequent collateral proceedings."
*United States v. Swinney*, No. 1:13-CR-422 (LMB), 2015 WL 9593651, at *4 (E.D. Va. Dec.
31, 2015) (quoting *United States v. Lambey*, 974 F.2d 1389, 1394 (4th Cir. 1992) and
*United States v. White*, 366 F.3d 291, 295-96 (4th Cir. 2004)) (internal markings
omitted). "Accordingly, a § 2255 movant who accepts a plea agreement 'is bound by the
representations he makes under oath during [his] plea colloquy' unless he presents 'clear
and convincing evidence' contradicting those representations. *Id.* (quoting *Fields*, 956
F.2d at 1299).

At his plea hearing, the Court engaged Boardman in a careful and thorough Rule
11 colloquy in which he affirmed that he understood the terms and ramifications of the
plea agreement and fully appreciated the consequences of pleading guilty. (ECF No. 95).
Boardman acknowledged that his sentence on Count One could be as long as thirty years,
and his sentence on Count Five would be at least five years and as long as life in prison.
(*Id.* at 38-39). He confirmed that defense counsel had guided and advised him on all
possible defenses to the charges in Counts One and Five. (*Id.* at 11). Boardman advised
the Court that he had read every paragraph of the plea agreement; defense counsel had
thoroughly reviewed the agreement with him; and he understood everything in it. (ECF
No. 95 at 12-13).

The Court then reviewed each paragraph of the plea agreement with Boardman,
allowing him to ask any questions he had about the agreement. (*Id.* at 13-32). During this
process, the Court and Boardman had a lengthy discussion regarding sentencing, the
factors considered under § 3553(a), and the sentencing guidelines. Boardman affirmed
that defense counsel had already reviewed the sentencing guidelines with him. (*Id.* at 26).
The Court explained that the sentence imposed could be above or below the advisory

16

guidelines, and the Court would consider "other drug activities that fall within the definition of relevant conduct" in determining the sentence. (*Id.* at 27). Boardman acknowledged his understanding that the quantity of drugs involved in Count One could go up depending upon the relevant conduct, which could result in a harsher sentence. In fact, Boardman expressed anxiety over the uncertainty related to the findings that would be made by the probation officer in the presentence report. (ECF No. 95 at 29-30).

Upon hearing from the Court, Boardman stated that he had no questions about the § 3553(a) factors, or the guidelines, and he wished to plead guilty. He denied that anyone had intimidated, coerced, pressured, or induced him to plead guilty. He expressed satisfaction with defense counsel's representation; and affirmed that he was entering the guilty plea voluntarily and with full understanding of the rights he was waiving and the consequences of doing so. (*Id.* at 41-43). Boardman then described what actions he had taken that made him guilty of Counts One and Five. After this, the Court found that Boardman fully understood the ramifications of entering a guilty plea to Counts One and Five and was pleading guilty freely and voluntarily. Noting that the pleas were factually supported, the Court accepted them and convicted Boardman on Counts One and Five of the Indictment.

Without question, the Rule 11 colloquy shows, and the undersigned **FINDS**, that Boardman's guilty pleas were voluntary and intelligent. He exhibited no hesitancy in speaking out at the hearing, and had all of his questions and concerns addressed. Finally, as noted above, the Fourth Circuit already indirectly determined that Boardman's plea was made knowingly and voluntarily when it found the waiver provision to be enforceable. *Boardman II*, ECF No. 26.

Having determined that Boardman's guilty pleas were voluntary and intelligent,

the undersigned next considers each of his specific challenges in turn.

### 2. *Ground One: Failure to Review and Discuss Case File*

In Ground One, Boardman argues that defense counsel was ineffective because defense counsel failed to review and discuss the case file with him, particularly regarding the questionable jurisdiction of Nitro police to investigate his conduct and the existence of an exculpatory affidavit related to the gun charge. (ECF No. 103 at 4). Defense counsel refutes Boardman's claim, indicating that he obtained and reviewed the file. The factual dispute between Boardman and defense counsel on this point does not merit an evidentiary hearing, however, because Boardman's challenge is precluded by his guilty plea. Regardless of whether defense counsel's actions were deficient, they occurred before Boardman pled guilty and Boardman makes no attempt to explain how the supposed failure affected the knowing and voluntary nature of his decision to plead guilty. *Tollett,* 411 U.S. at 267. By entering a guilty plea, Boardman waived any alleged constitutional deficiencies that occurred before his plea. *Id.* at 267.

Furthermore, Boardman claims that he was aware of exculpatory information contained in his case file, yet he freely admitted in open court that he was in fact guilty of the crimes charged. He provided a description of the actions he took which rendered him guilty of Counts One and Five. Based on the statements made by Boardman, under oath at the plea hearing, the purported exculpatory evidence could not have been credible or persuasive. As such, there is no reason to conclude that Boardman would not have pled guilty but for defense counsel's failure to thoroughly review with him parts of his case file. Accordingly, the undersigned **FINDS** that, as Boardman does not plausibly assert that he was prejudiced by defense counsel's failure to review the file with him and does not state a claim for ineffective assistance of counsel, Count One should be dismissed.

### 3. Ground Two: Incorrectly Advising That "Ice Law" Would Not Be Applied at Sentencing

In Ground Two, Boardman asserts that defense counsel pressed him to plead guilty by falsely stating that the Government would not use "ice law" to increase his sentence. (ECF No. 103 at 5). Defense counsel concedes that he advised Boardman that the plea agreement was in his best interest, but contends that Boardman is incorrect in his assertion that "ice law" was used to calculate the quantity of drug attributable to him. Once again, the factual dispute between Boardman and defense counsel regarding the use of "ice law" to enhance Boardman's sentence does not require an evidentiary hearing, because the quantity of drug attributed to Boardman, how it was calculated, and the effect on his sentence is clear from the record. The record demonstrates that Boardman was attributed 3,573 kilograms of converted drug weight, which included grams of a methamphetamine mix and grams of methamphetamine actual, but not "Ice" as defined in the USSG. (ECF No. 86 at 8). Therefore, Boardman's sentence was not enhanced on the basis that he possessed or distributed Ice methamphetamine.

The subject of drug weight calculations was a key topic at Boardman's sentencing hearings, and the defense pressed for a reduction in the amount attributed to Boardman's conduct. (ECF No. 93 at 137-146; ECF No. 94 at 20–24). Insofar as defense counsel's supposed assurance concerning the relevant drug quantity amount was made before Boardman decided to plea, the undersigned construes this claim to implicate the knowing, voluntary nature of the plea. However, as analyzed previously, Boardman's plea was knowing and voluntary. In addition, Boardman cannot show prejudice stemming from counsel's alleged presentence underestimate of the calculations that would be used for sentencing because Boardman's sentence was well within the range contemplated in the

plea agreement.

Boardman affirmed in the agreement and later twice testified that he understood his sentence could be as long as 30 years on Count One and at least 5 years and as long as life imprisonment on Count Five. (ECF No. 95 at 14–16, 37). Under oath, Boardman confirmed that no other specific promises of leniency had been made to him other than those included in the terms of the plea agreement. (*Id.* at 41). The agreement is silent as to the precise quantity of drug attributable to Boardman as a result of his conduct; he acknowledged at the plea hearing that his eventual USSG range could take into account all relevant drug quantities. (*Id.* at 27). His assertions now that defense counsel's assessment of his likely penalty affected the knowing and voluntary nature of his plea are directly contradicted by his sworn testimony at the time of the plea hearing and do not present a nonfrivolous ground for relief.

Even if defense counsel's prediction of the final attributable drug weight was incorrect, such an error does not render his representation of Boardman constitutionally inadequate. *United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995) (holding that there is no possibility of prejudice based on incorrect calculation of a possible sentence when the defendant was properly advised of the maximum sentence he could receive and pled guilty based on that information); *Harper v. United States*, 661 F. Supp. 2d 587, 593 (N.D.W. Va. 2009), *report and recommendation adopted*, No. 3:07-CR-49, 2009 WL 10704750 (N.D.W. Va. Nov. 5, 2009) (holding that such a claim fails as a matter of law). Boardman cannot now claim that defense counsel's mistaken forecast was prejudicial when he was sentenced well below the maximum term he clearly knew was possible. To repeat, Boardman testified that he had been given no promise or expectation of leniency. *See United States v, Morris*, 273 Fed. Appx 291, 292-93 (4th Cir. 2008) ("A defendant's

statements at a guilty plea hearing are presumed true. Unsupported subsequent allegations are insufficient to overcome representations at the hearing."); *see also Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)). He knew that the quantity of drug to be attributed to him was unknown at the time of the plea hearing, and he expressed anxiety over the uncertainty associated with the drafting of a presentence report. Notwithstanding his concerns, Boardman decided to enter a guilty plea. Under these circumstances, Boardman does not state a claim upon which relief could be granted based on defense counsel's incorrect assessment of the relevant drug weights attributable to Boardman.

Moreover, the transcripts of the sentencing hearings reflect that defense counsel advised Boardman that a guilty plea was in his best interest, because the Government intended to supersede the indictment and modify Count One in such a manner that a statutory mandatory minimum sentence of five years would apply, rather than no mandatory minimum as Count One was currently written. (ECF No. 93 at 10-11). Furthermore, the Government agreed to dismiss four additional counts against Boardman. Consequently, as the plea agreement offered a benefit to Boardman, defense counsel's advice regarding its benefits fell within the range of reasonable professional assistance.

As to whether counsel was ineffective at sentencing, Boardman does not indicate what defense counsel could have done differently that would have resulted in a lighter sentence. Defense counsel objected to the quantity of drug attributed to Boardman on two grounds: (1) that the amount supposedly provided by Jones was incorrect and should be excluded and (2) that laboratory values recently obtained by the Government should not be used to calculate the weight of the drug attributed to Boardman as they were not

available at the time the plea agreement was signed. The fact that the Court rejected those arguments does not render defense counsel ineffective. *Bell v. Evatt*, 72 F.3d 421, 429 (4th Cir. 1995) (concluding that petitioner could not demonstrate ineffective assistance by pointing to a "reasonable, but ultimately unsuccessful strategy."). Accordingly, the undersigned **FINDS** that Ground Two should be dismissed.

### 4. Ground Three: Failure to Move to Suppress Jones's Statements Concerning Drug Weight

In Ground Three, Boardman argues that his counsel was ineffective by failing to file motions to suppress statements made by Jones that added significant weight to the methamphetamine quantities used to calculate Boardman's USSG range. (ECF No. 103 at 6). Boardman contends that Jones provided contradictory statements, and Boardman asked defense counsel to file suppression motions to prevent the use of the statements at sentencing. Defense counsel responds by indicating that the statement of Jones used at sentencing was from his grand jury testimony and was made under oath. In reply, Boardman reiterates that "someone else" was allowed to testify about Jones's statements, without Boardman's permission, and the testimony was false. (ECF No. 112 at 3–4).

On these facts, Boardman cannot state a claim for relief; therefore, an evidentiary hearing is unnecessary. The record is clear that defense counsel did not file motions to suppress evidence submitted at the sentencing hearing and is also clear regarding the individuals who testified and the nature of that testimony. However, the claims raised by Boardman simply do not demonstrate ineffective assistance of counsel.

To begin, it is generally accepted that a motion to suppress evidence is not proper in the context of a sentencing hearing. *United States v. Brimah,* 214 F.3d 854 (7th Cir. 2000). As indicated by Fed. R. Crim P. 12(b), motions to suppress evidence "must be made

before trial." *See* Fed. R. Crim. P. 12(b)(3)(C). Boardman had already pleaded guilty; therefore, the criminal proceeding was in the post-conviction stage, not the pretrial stage. Given the stage of the proceeding, defense counsel was not ineffective for declining to file suppression motions. *See United States v. Holmes*, No. CRIM. 3:08-604-CMC, 2012 WL 1952286, at \*4 (D.S.C. May 30, 2012) (holding that "the exclusionary rule does not generally bar consideration of illegally seized evidence during sentencing proceedings for the purpose of making findings required under the Guidelines.") (citations omitted); *also Moody v. Polk,* 408 F.3d 141, 151 (2005). Still, some argue that counsel should be able to request the exclusion of evidence at sentencing when the evidence is seized in violation of the Fourth Amendment; however, that was not the case here. *See, e.g., Cole v. United States*, No. 3:15-CR-226-D(14), 2021 WL 3744088, at \*4 (N.D. Tex. July 14, 2021), *report and recommendation adopted,* No. 3:15-CR-226-D(14), 2021 WL 3743807 (N.D. Tex. Aug. 24, 2021). Instead, the evidence at issue included voluntary statements made by a witness.

Furthermore, the Rules of Evidence generally do not apply to sentencing hearings. *See* Fed. R. Evid. 1101(d). Consequently, the Government was free to offer the testimony of law enforcement officers even though Jones did not testify. Defense counsel cross-examined the witnesses and provided the Court with Jones's grand jury statement, which offered testimony by Jones that contradicted his statement to law enforcement officers. As such, the Court had all of the information helpful to Boardman's argument in front of it when the Court made its findings. Finally, as the Court made clear, it also relied on the PSR, which had calculated the amount of methamphetamine received from Jones prior to the sentencing hearing and agreed with the Government that the amount was in excess of 1400 grams, rather than the smaller amount propounded by the defense.

Despite Boardman's opposition to defense counsel's approach, Boardman does not provide any factual allegation that tends to support the conclusion that defense counsel was ineffective, or that the decisions made by counsel in addressing the evidence were anything but "virtually unchallengeable" strategic choices. *Bell v. Evatt*, 72 F.3d 421, 429 (4th Cir. 1995). *See also Sallie v. N. Carolina*, 587 F.2d 636, 640 (4th Cir. 1978) (finding that cross-examination is a matter of trial strategy that cannot be second-guessed in a collateral habeas proceeding); *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) ("[F]ailure to file a suppression motion does not constitute *per se* ineffective assistance of counsel"); *Thomas v. United States*, No. 5:15-CR-138-BR, 2019 WL 2617062 (E.D.N.C. June 26, 2019) (holding that counsel's strategic decision not to file a motion to suppress, even if potentially meritorious, was objectively reasonable).

At sentencing, defense counsel informed the Court that he and Boardman did not deny that Jones made statements to law enforcement about the relevant quantities of drugs sold, but sought to show that Jones's statements changed over time and were not credible. (ECF Nos. 93 at 70–71, 94 at 22–23). While the Court was persuaded by the Government's assessment of drug quantities and gave it due weight when determining the applicable calculation, nothing in the record suggests that defense counsel acted unreasonably at the sentencing hearing. *See Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight."). The Court will not second-guess an attorney's tactical decisions unless they appear unreasonable in view of all of the circumstances. *Goodson v. United States*, 564 F.2d 1071, 1072 (4th Cir.1977). Because Boardman fails to sufficiently allege that defense counsel's course of action was objectively unreasonable, his claim does not satisfy the first prong of *Strickland*; therefore, the undersigned thus **FINDS** that

24

Boardman does not state a viable claim in Ground Three.

### 5. *Ground Four: Failure to Show Video Evidence at Sentencing*

In Ground Four, Boardman asserts that his counsel was ineffective by failing to play a videotape during the sentencing hearing, which showed law enforcement officers threatening Boardman's safety for refusing to cooperate in their investigation of jailhouse misconduct. (ECF Nos. 103 at 8, 112 at 4). Boardman contends that when agents interviewed him about his arrangement with a correctional officer, John Roach, to deliver contraband to Boardman in jail, they tried to force him to cooperate by, ironically, threatening to make it seem that he *had* cooperated, thus subjecting him to retaliation by other inmates. (ECF No. 112 at 4). Defense counsel possessed a video recording of the interview but did not show it at Boardman's sentencing hearing. In response, defense counsel states that Boardman's allegations are "false," without further explanation. Despite the differences between Boardman and defense counsel on this point, an evidentiary hearing is not necessary, because the record confirms that defense counsel received a video recording capturing the agents' interview of Boardman, and the videotape was not played by counsel at the sentencing hearing. (ECF No. 93 at 62–63). Because of his activity at the jail, Boardman lost the deduction in his USSG range he would otherwise have received for accepting responsibility for his conduct. (ECF No. 94 at 27).

It is unclear from Boardman's assertions how defense counsel's failure to show the video recording prejudiced him given that he did not confess to any wrongdoing in response to the threats of law enforcement. (ECF No. 93 at 57-60). Clearly, the videotape would have been relevant if Boardman had confessed and now claimed that his confession was extorted. However, that was not the case. In his motion, Boardman does not deny his role in the jailhouse misconduct and does not contend that the video recording would

have cleared him of the underlying wrongdoing even if, as he insists, the film showed officers forcefully pressuring him to cooperate in the investigation. There is no indication in the pleadings that the outcome of sentencing would have been different if defense counsel had chosen to play the video tape of the interview in open court. *United States v. Russell*, 34 F. App'x 927, 928 (4th Cir. 2002). The video recording would not have exonerated Boardman and may even have fortified the Court's finding that Boardman trafficked drugs while in custody. In any event, the correctional officer, John Roach, testified at the sentencing hearing and admitted that he had delivered contraband to Boardman in exchange for cash to cover gambling losses. (ECF No. 93 at 22-51). Nothing in the video recording refuted this testimony.

Moreover, this claim must fail because, under the facts as alleged by Boardman, defense counsel's refusal to play the videotape was a tactical decision and does not overcome this Court's "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Boardman alleges that defense counsel came to court for the sentencing hearing in possession of the video recording and brought an assistant to aid in showing the tape if needed. (ECF No. 112 at 4). However, defense counsel chose not to play the video recording, and when Boardman urged him to do so in a private off-record conversation, defense counsel told Boardman to "trust him, he was the lawyer." (*Id.*). This sequence of events is absolutely supported by the transcript of the sentencing hearing. (ECF No. 93 at 3, 62–66). On these facts, the Court cannot conclude that Boardman properly states a claim that defense counsel's decision was objectively unreasonable. Boardman implicitly admits that defense counsel's decision was strategic, and despite Boardman's vehement disagreement with the strategy, the Court cannot now question defense counsel's decision. *See Hoots v.*

26

*Allsbrook*, 785 F.2d 1214, 1219 (4th Cir. 1986) ("[C]ourts considering a claim of ineffective assistance should not second-guess strategic decisions of counsel."); *Higgs v. United States*, 711 F. Supp. 2d 479, 515 (D. Md. 2010) ("Defense counsel constantly must decide what questions to ask and how much time to spend on a particular witness. These are precisely the types of tactical decisions a court is not supposed to second guess.").  Thus, even accepting that defense counsel opted not to show video evidence as Boardman demanded, the undersigned **FINDS** that Boardman is not entitled to relief on Ground Four.

### 6. Ground Six: Failure to Object to PSR

As to Ground Six, Boardman asserts that defense counsel was ineffective because he failed to submit written objections to the PSR insofar as it attributed additional significant drug quantities to him. (ECF No. 103 at 13). In response, defense counsel denies that he was ineffective. The Court need not assess whether this alleged failure was deficient performance by defense counsel, however, because the record plainly shows that defense counsel submitted written objections to the PSR. (ECF No. 86 at 27-29). In particular, counsel objected to the withholding of a reduction for acceptance of responsibility, arguing a lack of evidence to support Boardman's role in the jailhouse misconduct, as well as to the amount of methamphetamine attributed to Boardman, stating that the relevant conduct attributed to Jones at his sentencing was equal to the amount attributed to Boardman even though Jones was Boardman's primary supplier and had customers other than Boardman. (*Id.*).

At the initial sentencing hearing, defense counsel added an oral objection to the PSR on the basis that it improperly incorporated laboratory values related to the purity of methamphetamine found in Boardman's possession when the laboratory values were not

available at the time the plea agreement was reached. (ECF No. 93 at 9-11). When the Court questioned defense counsel about why the oral objection was not in writing, defense counsel indicated that he did not have all of the information on which to object until a few days prior to the hearing. (*Id.* at 11). Ultimately, the Court recessed the hearing to allow further preparation on the oral objection.

Boardman clearly suffered no prejudice as a result of defense counsel's handling of the objections and thus cannot show that his rights were violated. Defense counsel did oppose the PSR through written and oral objections, and the Court granted a recess to allow for further development of evidence and argument from the parties. (ECF No. 93 at 19–20). At the continued sentencing hearing, both parties presented arguments in support of their view of the relevant drug quantity, but the Court ultimately found that the estimate advocated by the Government would be determinative of the USSG range. (ECF No. 94 at 28–29). Accordingly, as the objections were raised and fully litigated, the undersigned **FINDS** that defense counsel was not constitutionally ineffective on this basis.

### 7. *Ground Eight: Failure to Move to Suppress Jones's Statements Concerning Drug Weight*

In Ground Eight, Boardman challenges defense counsel's failure to move to suppress Jones's statements about drug quantities, a claim which appears to be redundant of Ground Three. Boardman does not return to this claim in his reply and the undersigned **FINDS** that, in keeping with the analysis above, he does not state a claim for relief on this ground.

### 8. *Ground Nine: Failure to Consult About Appeal*

Boardman alleges in Ground Nine that defense counsel was ineffective for filing an

28

appeal without first discussing its contents with him. (ECF No. 103 at 16–17). Defense counsel contends that he advised Boardman that he was working on the appeal brief and told Boardman to let him know if Boardman had any questions. In reply, Boardman admits that he received a letter from defense counsel confirming that he was working on the appeal, but when Boardman tried to call defense counsel to discuss the appeal, counsel's phone would not accept calls from the Bureau of Prisons. (ECF No. 112 at 5). Boardman complains that defense counsel did not send him a copy of the appellate brief, and he only learned of the Fourth Circuit's judgment through a Government notice. Notwithstanding the slight differences between the recollections of Boardman and defense counsel, an evidentiary hearing is not necessary, because the conflicts are not material. The Court accepts that Boardman wished to collaborate on the appellate brief and that wish was not realized. The Court also accepts that defense counsel did not make an effort to involve Boardman in the writing of the brief and was slow to notify him about the Fourth Circuit's refusal of the appeal.

Even accepting these facts to be true, however, Boardman's claim fails as a matter of law. Counsel generally has an obligation to consult with a client about *whether* to take an available appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 478, 120 S. Ct. 1029, 1035, 145 L. Ed. 2d 985 (2000). However, the Sixth Amendment does not go so far as to require counsel to include the defendant in the preparation of the appeal itself. *Smith v. Cox* 435 F.2d 453, 458 (4th Cir. 1970), *vacated on other grounds by Slayton v. Smith,* 404 U.S. 53 (1971); *McIntyre v. Duncan*, No. 03-CV-0523 (ADS), 2005 WL 3018698, at *3 (E.D.N.Y. Nov. 8, 2005) (citing *Smith*) ("Although it may be desirable and productive, the Constitutional right to effective assistance of counsel does not encompass the requirement that an attorney consult with his client to discuss the alleged trial errors that

his client wishes to pursue."); *Proctor v. McCarthy*, No. 19-CV-2988GBDJLC, 2020 WL 1149660, at *22–23 (S.D.N.Y. Mar. 10, 2020).

Furthermore, Boardman does not provide any basis that would allow for the conclusion that he was prejudiced by defense counsel's failure to discuss the appellate grounds with him. He does not indicate what meritorious issues were available yet ignored in favor of less appropriate arguments. *See Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000). Boardman's appeal was denied because he knowingly and intentionally waived his right to appeal as part of the plea agreement. Boardman fails to articulate any ground which could have been raised on appeal that was not waived by the terms of the plea agreement. Therefore, as this ground fails to state a claim for relief, the undersigned **FINDS** that it should be dismissed.

Given that none of the stated grounds in Boardman's motion constitute a claim for which relief may be granted, the undersigned **FINDS** that his motion should be denied.

## IV.    **Proposal and Recommendations**

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Respondent's request for dismissal, (ECF No. 110), **DENY** Boardman's § 2255 motion, (ECF No. 103), and **DISMISS** this case, removing it from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to

file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Copenhaver, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Movant, and counsel of record.

**FILED**:  February 10, 2022

Cheryl A. Eifert
United States Magistrate Judge

31