UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

BRUCE LEE BOARDMAN,

      Movant,

v.                                Civil Action No.  2:21-cv-00006
                                  Criminal Case No. 2:18-cr-00207-1

UNITED STATES OF AMERICA,

      Respondent.

<u>MEMORANDUM OPINION AND ORDER</u>

      Pending before the court are the objections of movant, Bruce Lee Boardman, ECF No. 114, to the Proposed Findings and Recommendation ("PF&R") of Magistrate Judge Cheryl A. Eifert, ECF No. 113, recommending granting the motion to dismiss of the respondent, United States.  ECF No. 110.

I. Background

      This civil action arises out of Bruce Lee Boardman's conviction in criminal case number 2:18-cr-00207-1.  The PF&R thoroughly and accurately recounts the procedural and factual background to this civil action.  ECF No. 113 at 2-10.

      On September 26, 2018, a grand jury in the Southern District of West Virginia returned a six-count indictment against Mr. Boardman.  Crim. Case No. 2:18-cr-00207-1, ECF No. 1.  Count One charged Mr. Boardman with possession with intent

to distribute methamphetamine in violation of Section 841(a)(1) of Title 21 of the United States Code.  Count Five charged him for knowingly using and carrying a firearm during and in relation to a drug trafficking crime in violation of Section 924(c)(1)(A) of Title 18 of the United States Code.

Pursuant to a plea agreement with the United States, Mr. Boardman agreed to plead guilty to Count One and Count Five of his indictment.  Id., ECF No. 58.  At a plea hearing held on April 5, 2019, the court accepted Mr. Boardman's guilty plea. Id., ECF No. 56.

In the plea colloquy conducted pursuant to Federal Rule of Criminal Procedure 11 at Mr. Boardman's plea hearing, the court explained to Mr. Boardman that the government, per the terms the plea agreement, intended to file a § 851 information to seek an enhancement with respect to Count One. Tr. 14:11-15:8, 15:16-23, ECF No. 95.  In the event the court ultimately found that an enhancement was warranted due to a prior felony drug conviction and serious drug felony, Mr. Boardman was informed that he faced a term of imprisonment of up to 30 years, a fine of up to $2 million, a term of supervised release of at least six years and as long as life, a special assessment of $100, the possible denial of federal benefits for as long as five years, and restitution.  Id.  Mr. Boardman was

further informed that the maximum penalty in the absence of such an enhancement would be a term of imprisonment of up to 20 years, a maximum penalty of $1 million, and supervised release for at least three years and as long as life.  Id. 15:9-15. Under oath, Mr. Boardman confirmed his understanding of each of these scenarios.

With respect to Count Five, the court explained to Mr. Boardman that he faced a mandatory minimum of five years and a maximum of up to life in prison, and that this sentence would run consecutively with any term of imprisonment imposed for Count One, as well as a term of supervised release for as long as five years, a fine of $250,000, a special assessment of $100, and restitution.  Id. 15:24-16:17.  Mr. Boardman, under oath, stated that he understood this.  The court then explained to Mr. Boardman the maximum penalty he faced under both Count One and Count Five, and Mr. Boardman again affirmed his understanding. Id. 16:18-17:20.

Mr. Boardman agreed that the stipulated facts contained within his plea agreement, and which were read into the record, were accurate, and that he understood everything in the stipulation.  Id. 19:3-21:5.

Mr. Boardman's plea agreement contained the following provision:

> **"WAIVER OF APPEAL AND COLLATERAL ATTACK.  Mr. Boardman knowingly and voluntarily waives his right to seek appellate review of his conviction and of any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or manner in which the sentence was determined, on any ground whatsoever including any ground set forth in 18 U.S.C. §3742(a), except that the defendant may appeal any sentence that exceeds the maximum penalty prescribed by statute. . . .  Mr. Boardman also knowingly and voluntarily waives the right to challenge his guilty plea and conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255."**

Case No. 2:18-cr-00207, Plea Agreement ¶ 10, ECF No. 58.

The court explained to Mr. Boardman, at length, the effect of waiving his appeal and collateral attack rights, and Mr. Boardman, after conferring with defense counsel, confirmed that he understood this provision of the plea agreement.  Id. 22:1-25:5.

The court proceeded to explain to Mr. Boardman that the government retained the right to inform the Probation Office and the court "of all relevant facts and conduct," and present evidence relevant to the factors set forth at 18 U.S.C. § 3553(a).  Id. 25:7-16.  The court then explained the role of the United States Sentencing Guidelines range at sentencing, and, more particularly, the role of relevant conduct.  Id. 26:12-

4

27:25. The court specifically stated that, with respect to drug

trafficking,

> "to the extent that you've engaged in other drug
> trafficking activities, if you have, that fall within
> the definition of relevant conduct, the quantity of
> drugs involved in those activities can be added to the
> quantity of drugs involved in Count One, and as the
> quantity goes up, so, too, do the sentencing
> guidelines tend to suggest a harsher sentence."

Tr. 27:17-23. Mr. Boardman confirmed his awareness of this

aspect of sentencing. Id. at 27:24-25.

When the court asked whether Mr. Boardman had any

questions with respect to factors which may affect the

sentencing guidelines range, Mr. Boardman expressed concern

about what relevant conduct the government may choose to present

and when. Id. 28:14-23, 30:6-12. The following exchange with

the court ensued:

> Boardman: Then as I go into the PSI phase, in essence,
> I feel that it's going in blind, because we have no
> idea if the government is withholding any other type
> of information that they may go into use.
>
> Now, I don't know if that's factual, but, to me, just
> to speak plainly, that's how I feel about it. And it's
> kind of disheartening, disconcerting.
>
> Court: I can imagine the uncertainty does weigh on
> you.
>
> The proceeding today is to determine whether or not
> you are going to enter a plea of guilty to these two
> counts under this plea agreement. And if you're ready
> to proceed on that basis, then the Court is ready to
> conclude the matter. If you are not, then this matter

>          needs to go to trial.
>
>          Boardman: By all means, Your Honor, I'm ready to
>          proceed.
>
>          Court: Very good.  And do you have any questions about
>          the factors under Section 3553(a) that the court has
>          noted?
>
>          Boardman: No, sir, I do not.
>
>          Court: And anything else on the guidelines?
>
>          Boardman: No, I do not.

Tr. 30:6-25.

Mr. Boardman confirmed his understanding and approval of the plea agreement, the placement of his initials on each page, his signature on its final page, and his signature on the stipulation of facts.  Id. 31:20-32:19.  The court then explained the effects of entering a guilty plea on Mr. Boardman's constitutional rights, id. 33:9-37:5, and recounted again the maximum penalty he faced for each count, id. 37:6-39:18.  Mr. Boardman confirmed he had not received any promises of leniency beyond that which was provided for in his plea agreement, or been threatened, intimidated, or coerced in any way.  Id. 41:2-10.  The court accepted Mr. Boardman's guilty pleas after finding that he entered the pleas voluntarily, with full knowledge of the consequences of doing so, and that there existed a factual basis for both pleas.  Id. 42:16-43:5, 49:15-50:5.

At sentencing, on August 14, 2019, the court sentenced Mr. Boardman to consecutive terms of imprisonment of 188 months for Count One and 60 months of imprisonment for Count Two, to be followed by six years of supervised release.  ECF No. 75.

With respect to relevant conduct, the court found that grand jury testimony of one Avante Jones regarding sales of methamphetamine to Mr. Boardman was credible and attributed 1,000 grams of methamphetamine to Mr. Boardman, in addition to four other transactions, all totaling 2,735.41 kilograms in converted drug weight and falling within the range of at least 1,000 kilograms but less than 3,000 kilograms as to constitute a base offense level of 30.  Id. at 179:15-180:11, 181:21.  Due to the specific offense characteristic of the weapons in Mr. Boardman's possession during the conduct for which he was charged for Count One, Mr. Boardman's total offense level rose to 32, along with a criminal history category of VI, which together yielded an advisory guideline sentencing range for imprisonment of 210 to 262 months for Count One, plus a 60-month consecutive minimum sentence for Count Five.  The court ultimately varied down one level from the guidelines, resulting in a range of 188 to 235 months for Count One.  Counts Two, Three, Four, and Eight were dismissed upon the government's motion, in accordance with the terms of the plea agreement.

From January 14, 2019 through his direct appeal, Mr. Boardman was represented by Gregory Campbell.  Mr. Campbell was appointed to represent Mr. Boardman after a conflict of interest was detected that required the withdrawal of the Federal Public Defender's Office as counsel.  See Case No. 2:18-cr-00207-1, ECF Nos. 38, 42.

On August 21, 2019, Mr. Boardman appealed his sentence to the Fourth Circuit Court of Appeals.  United States v. Boardman, No. 19-4606 (4th Cir. Feb. 20, 2022).  In Mr. Boardman's docketing statement for his appeal, he objected to what is stated to be "over 1,400 grams of methamphetamine" being attributed to him as relevant conduct at sentencing, id., ECF No. 4, while his briefing argued that his sentence was "unreasonable" inasmuch as it is "greater than necessary to advance the purposes of sentencing," in accordance with the factors set forth in 18 U.S.C. § 3553(a).  Id., ECF No. 17.  In a one-paragraph opinion, the Fourth Circuit granted the United States' motion to dismiss the appeal, concluding that "Boardman knowingly and voluntarily waived his right to appeal and that the issue Boardman seeks to raise on appeal falls squarely within the scope of his waiver of appellate rights."  The Fourth Circuit issued a mandate on March 13, 2020.

On January 5, 2021, Mr. Boardman, now proceeding <u>pro se</u>, filed the instant motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  Case No. 2:18-cv-006, ECF No. 103.  Mr. Boardman raises nine grounds for relief, which the court sets forth as follows:

> Ground One: Mr. Campbell did not investigate the case file prepared by Mr. Boardman's previous attorney and failed to submit "critical evidence" from the file.
>
> Ground Two: Although Mr. Boardman did not wish to plead guilty, he did so upon the advice of counsel who, in error, told him the government would not use "ice law" at sentencing.
>
> Ground Three: Mr. Campbell failed to file motions at sentencing to suppress grand jury testimony of Mr. Jones, despite Mr. Boardman wanting to do so.
>
> Ground Four: Mr. Campbell refused to show video, at sentencing, of law enforcement officers threatening Mr. Boardman's safety due to his refusal to cooperate in a separate investigation.
>
> Ground Five: Mr. Boardman's defense was hindered by the late provision of the presentence investigation report ("PSR").
>
> Ground Six: Mr. Campbell failed to object to the PSR and "failed to even prepare the court document." Specifically, Mr. Boardman claims that he wished to object to drug weights determined at sentencing.
>
> Ground Seven: The government, at sentencing, procured perjured testimony from Benjamin Mooney, relating to Mr. Boardman's drug distribution and use of firearms.
>
> Ground Eight: Mr. Campbell did not move to suppress Mr. Jones's prior testimony after Mr. Jones refused to testify at the sentencing hearing.
>
> Ground Nine: Mr. Campbell filed a direct appeal without Mr. Boardman's knowledge or input.

The magistrate judge, upon motion by the government, ordered Mr. Campbell to provide "necessary, specific information directly related to [Mr. Boardman's] ineffective assistance of counsel claims." Id., ECF Nos. 107, 108.  Thereafter, Mr. Campbell filed a sworn affidavit.  Id., Affidavit of Gregory J. Campbell, ECF No. 109 ("Campbell Aff.").  Generally speaking, Mr. Campbell denies Mr. Boardman's allegations.  Presently, the government seeks to dismiss the § 2255 motion, relying in large part on Mr. Campbell's affidavit.  Id., ECF No. 110.

The PF&R recommended finding against Mr. Boardman as to all nine of his grounds for relief and granting the government's motion to dismiss.  PF&R at 30.  Mr. Boardman objects to the magistrate judge's proposed findings and recommendation as to seven of the nine grounds in his motion; that is, all but Grounds Five and Seven set forth above. Objections, ECF No. 114.

## II. Applicable Law

### 1. 28 U.S.C. § 2255

A § 2255 motion is a collateral proceeding rather than a direct review of the underlying proceeding.  Section 2255 of Title 28 of the United States Code provides that

> "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

28 U.S.C. § 2255.  The petitioner in such a proceeding "bears the burden of proving his grounds for collateral attack by a preponderance of the evidence."  Berry v. United States, 884 F.Supp.2d 453, 457 (E.D. Va. 2012).

The Rules Governing Section 2255 Proceedings ("Rules") for the United States District Courts apply in such proceedings. Rule 1.  Under the Rules, the court must determine whether an evidentiary hearing is warranted in the matter on the basis of "the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7."  Rule 8.

The Rules authorize the court to refer § 2255 motions to a magistrate judge to file a PF&R for disposition pursuant to 28 U.S.C. § 636(b).  Rule 8(b).  If a party files timely objections to the PF&R, the court "must determine de novo any proposed finding or recommendation to which objection is made." Id.  The court "may accept, reject, or modify any proposed finding or recommendation."  Id.

### 2. Grounds for Collateral Attack

Generally, a waiver of the right to collaterally attack one's conviction and sentence is enforceable, subject to certain exceptions, namely: (1) claims challenging whether a plea agreement was voluntary and knowing and (2) claims of ineffective assistance of counsel.  See United States v. Lemaster, 403 F.3d 216 (4th Cir. 2005) ("[A] criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary."); United States v. Attar, 38 F.3d 727, 732–33 (4th Cir. 1994) (right to bring ineffective assistance claim related to post-plea proceedings not subject to general waiver of appellate rights).

When a defendant enters a guilty plea, the guilty plea "represents a break in the chain of events which has preceded it in the criminal process."  Tollett v. Henderson, 411 U.S. 258,

267 (1973); <u>Fields v. Att'y Gen. of State of Md.</u>, 956 F.2d 1290, 1294 (4th Cir. 1992) ("It is well-established that a voluntary and intelligent guilty plea forecloses federal collateral review of allegations of antecedent constitutional deprivations.").

Consequently, grounds for collaterally attacking a sentence based on alleged constitutional violations which occur prior to a guilty plea are limited to that which "attack the voluntary and intelligent character of the guilty plea," due to constitutionally inadequate legal representation under the Sixth Amendment to the United States Constitution.  <u>See</u> <u>Fields</u>, 956 F.2d at 1294 ("A guilty plea does not bar collateral review of allegations of ineffective assistance of counsel in so far as the alleged ineffectiveness bears on the voluntariness of the guilty plea.").  That is, "[c]onduct of counsel occurring prior to entry of a guilty plea may be examined in evaluating the extent to which the prior representation influenced the voluntary and intelligent character of the guilty plea entered." <u>Id.</u> at 1296 n.17.

The Sixth Amendment to the United States Constitution requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . to have the Assistance of Counsel for his Defense."  U.S. Const. Amend VI.  As interpreted by the United States Supreme Court, the Sixth Amendment guarantees the right

to effective assistance of counsel.  <u>Strickland v. Washington</u>,
466 U.S. 668 (1984).

A movant advancing a claim of ineffective assistance
of counsel must satisfy a two-prong test.  <u>Id.</u> at 687.  First,
"the defendant must show that counsel's performance was
deficient."  <u>Id.</u>  Any deficiency in counsel's performance must
be "so serious that counsel was not functioning as the 'counsel'
guaranteed by the Sixth Amendment."  <u>Id.</u>  The court's review of
counsel's conduct is "highly deferential," and the court "must
indulge a strong presumption that counsel's conduct falls within
the wide range of reasonable professional assistance."  <u>Id.</u> at
689.  Second, the defendant must show his defense was prejudiced
by counsel's deficient performance.  <u>Id.</u>  Prejudice is shown
when "a reasonable probability exists that, but for counsel's
unprofessional errors, the result of the proceeding would have
been different."  <u>Id.</u> at 694.  A "reasonable probability" exists
when "there is a probability sufficient to undermine confidence
in the outcome."  <u>Id.</u>

### III. Analysis

Inasmuch as Mr. Boardman entered a guilty plea and
executed a waiver of his right to collaterally attack his
sentence, any grounds for vacating his sentence due to alleged
constitutional infirmities in his prosecution that occurred

prior to his guilty plea are limited to those that bear upon the
voluntary and intelligent nature of his plea due to ineffective
assistance of counsel.  See Tollett, 411 U.S. at 268.  Mr.
Boardman's first and second objections with respect to Ground
One and Ground Two concern events which occurred prior to entry
of his plea.  For alleged post-plea constitutional violations,
Mr. Boardman must demonstrate that his counsel's performance was
constitutionally deficient and prejudiced his defense.  See
Strickland, 466 U.S. at 687.  The remainder of Mr. Boardman's
objections fall into this category.

      At the outset, the court considers whether Mr.
Boardman's plea was voluntary and knowing.  Having closely
reviewed Mr. Boardman's plea hearing, the court concludes that
Mr. Boardman's guilty pleas were voluntary and knowing.
Accordingly, the court adopts the magistrate judge's finding
with respect to the voluntary and knowing nature of Mr.
Boardman's plea.  Next, the court proceeds to consider each of
Mr. Boardman's objections, which largely track the grounds
raised in his § 2255 motion.

1. Pre-Plea Grounds and Objections

First, Mr. Boardman objects to the magistrate judge's finding and recommendation with respect to Ground One. Objections at 1-2; PF&R at 18.  Mr. Boardman argues that Mr. Campbell's counsel was ineffective because Mr. Campbell did not review investigative materials in a case file that were prepared prior to Mr. Campbell's appointment as counsel.  ECF No. 114 at 1-2.  Principally, Mr. Boardman maintains that these files were exculpatory insofar as the Nitro Police Department lacked jurisdiction when it stopped and searched his vehicle, resulting in the seizure of methamphetamine, marijuana, a digital scale, two firearms, and ammunition.  Id.  Mr. Boardman also claims that an affidavit in the file supports his contention that he did not know about the firearms in the vehicle.  Id.  Rather than review and utilize this information, according to Mr. Boardman, Mr. Campbell advised him to plead guilty for which he was told he would likely be sentenced to 10-12 years of imprisonment.  Id.  Mr. Campbell, in his affidavit, denies this version of events, averring that he reviewed the file and that he informed Mr. Boardman that "a plea of guilty would waive most pretrial defects, including an illegal search and/or seizure." Campbell Aff. ¶ 7.

Any constitutional inadequacy with respect to Mr.
Campbell's representation must, due to Mr. Boardman's later
guilty plea, necessarily be limited to demonstrating that
ineffective assistance of counsel affected the voluntary and
knowing nature of the plea.  See Fields, 956 F.2d at 1296-97.
The court construes Mr. Boardman's statement in his objection
that Mr. Campbell "advised movant to proceed under the
assumption of a 10-12 year sentence concluding a plea of
guilty," as an attempt to couch Mr. Campbell's alleged failings
as affecting the voluntary and knowing nature of his plea.

The court need not determine whether Mr. Campbell's
performance was deficient under prong one of Strickland,
inasmuch as Mr. Boardman's claim must fail because he cannot
show prejudice under the second prong.  To show prejudice under
Strickland  Mr. Boardman must demonstrate a reasonable
probability of a different outcome, that is, that he would not
have pleaded guilty.  See United States v. Myers, 697 Fed. Appx.
204, 204 (4th Cir. 2017) ("[A] defendant can show prejudice only
by demonstrating 'a reasonable probability that, but for
counsel's errors, he would not have pleaded guilty and would
have insisted on going to trial.'") (quoting Hill v. Lockhart,
474 U.S. 52, 59 (1985)).

At Mr. Boardman's plea hearing, the court explained to Mr. Boardman, at length and on multiple occasions, the maximum sentence he faced for each count individually and collectively. Mr. Boardman testified under oath that he understood the maximum penalty he faced for each count and in total.  Mr. Boardman also testified that he understood that he had not been offered any promises of leniency besides that which was expressly set forth in the plea agreement.  In full awareness and understanding of the terms of the plea agreement, Mr. Boardman stated that he wished to enter a plea of guilty.  Whatever counsel may or may not have advised Mr. Boardman beforehand, he was informed by the court of the potential sentence he faced when he entered his guilty plea.  Mr. Boardman does not dispute the accuracy of anything the court told him during the Rule 11 colloquy.

Where "the trial court properly inform[s]" a defendant "of the potential sentence he faced, he could not be prejudiced by any misinformation his counsel allegedly provided him." United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995).  That Mr. Campbell may have told Mr. Boardman different information before the plea hearing than that which he heard and understood at the plea hearing does not satisfy Strickland.

Furthermore, Mr. Boardman freely, forthrightly, and at length admitted his guilt to both counts at his plea hearing,

rendering implausible his claims that the materials were somehow exculpatory and that he would have otherwise proceeded to trial.

Accordingly, the court overrules Mr. Boardman's first objection inasmuch as he cannot demonstrate ineffective assistance of counsel nor undermine the voluntary and knowing nature of his plea, and adopts the magistrate judge's finding as to this ground.

Next, Mr. Boardman objects to the magistrate judge's finding that Ground Two should be dismissed in that "ice law" was not used against Mr. Boardman at sentencing and that Mr. Campbell's representation with respect to drug weights and the desirability of pleading guilty did not constitute ineffective assistance of counsel under Strickland.  Objections at 2; PF&R at 22.  Mr. Boardman now objects to the fact that drug weights for determining relevant conduct were calculated using both "meth actual" and "meth mixture."  Objections at 2.  According to Mr. Boardman, he pleaded guilty under the mistaken assumption that only methamphetamine mixture would be used in determining drug weights.  Id.

The record supports Mr. Boardman's contention on this point to the extent that Mr. Campbell did state his belief, at sentencing, that only methamphetamine mixture would be used. Tr. 9:22-11:8.  At sentencing, Mr. Campbell explained to the

court that, on February 15, 2019, the government informed him
that, on March 5, 2019, it intended to supersede the indictment,
resulting in a mandatory minimum of five years and a maximum of
40 years for Count One, and a mandatory minimum of ten years and
a maximum of life as to Count Five.  When Mr. Boardman signed
the plea agreement on February 25, 2019, laboratory results for
methamphetamine seized from Mr. Boardman were not yet available,
but were provided on March 1, 2019.  Mr. Boardman entered his
pleas of guilty to Counts One and Five on April 5, 2019.  In
response to Mr. Campbell's contention on this issue, at the
sentencing hearing on August 12, 2019, the government stated
that, in exchange for pleading guilty, it had agreed to forego
superseding the indictment, but that there had been no agreement
as to guidelines inasmuch as laboratory analysis had not been
completed and a final drug weight that could be attributed to
the defendant as relevant conduct had not been determined.  See
id. 128:18-129:24.

        At sentencing, the drug weight attributed to Mr.
Boardman consisted of methamphetamine mixture and
methamphetamine actual, and did not include any "ice."  See ECF
No. 86 at 8.  Practically speaking this made no appreciable
difference in Mr. Boardman's case inasmuch as the converted drug
weight for the methamphetamine actual was so relatively little

that its inclusion, as will be seen, made no difference to the base offense level of 30 ultimately found by the court for the applicable range of at least 1,000 kilograms but less than 3,000 kilograms of converted drug weight.  Regardless, Mr. Campbell objected to the methamphetamine actual calculation of 46.19 grams of 78 percent pure methamphetamine (equaling 720.564 kilograms) and 0.2737 grams of 75 percent pure methamphetamine (equaling 4.1055 kilograms), and sought to calculate all drug weights as methamphetamine mixture.[1]  See Tr. 9:22-11:8, ECF No. 93.  The government later agreed not to attribute the 0.2737 grams to Mr. Boardman.

As the court noted at sentencing, Mr. Boardman's plea agreement is silent as to the guidelines.  Id. at 137:12-4.  The court, ultimately, did not sustain the objection, and the 46.19 grams were calculated according to the conversion weight for

---

[1]     As prescribed in United States Sentencing Guidelines § 2D1.1 and the Commentary thereto, converted drug weight ("CDW") for methamphetamine is calculated as follows:

> Methamphetamine mixture: 1 gram x 2 = number of kilograms of CDW
>
> Methamphetamine actual: 1 gram x percentage of methamphetamine purity x 20 = number of kilograms of CDW
>
> Methamphetamine "ice" (80% or more pure methamphetamine): 1 gram x 20 = number of kilograms of CDW

methamphetamine actual.  Id. 179:19-21.  The remainder of the
methamphetamine attributed to Mr. Boardman was calculated as
methamphetamine mixture.

Inasmuch as the advice of counsel predated his guilty
plea, Mr. Boardman's contention with respect to drug weight must
go to whether any alleged ineffective assistance of counsel
affected the voluntary and knowing nature of his plea.  See
Fields, 956 F.2d at 1296-97.  The court construes Mr. Boardman's
second objection as pertaining only to counsel's advice prior to
entering his guilty plea, which induced him to plead guilty,
going as it does to the voluntary and knowing nature of his
plea.

At the plea hearing, the court reviewed, at length,
the terms of Mr. Boardman's plea agreement.  Under oath, Mr.
Boardman confirmed that he understood that the plea agreement
did not state specific drug quantities that could be
attributable to him as relevant conduct and that the sentencing
guidelines range could account for all relevant conduct.  Tr.
27:8-30:20, ECF No. 95.  Mr. Boardman expressed trepidation
about this uncertainty, but ultimately confirmed his
understanding of the agreement's terms.  Id.  He also testified
that he understood the maximum sentence for each count and that
no leniency had been promised to him.  In full awareness and

understanding of the plea agreement's terms and the maximum
penalty he faced, Mr. Boardman elected to plead guilty to both
counts.  The court believes this is sufficient to overrule Mr.
Boardman's objection, and adopts the magistrate judge's finding
and recommendation as to this ground.  Nevertheless, the court
will consider further the substance of Mr. Boardman's
ineffective assistance of counsel claim.

The question under the performance prong of <u>Strickland</u>
is whether, under a highly deferential standard, defense counsel
provided reasonably effective assistance under all the
circumstances.  466 U.S. at 687-88.  The court cannot conclude
that Mr. Campbell's performance was deficient under the
circumstances.  Mr. Campbell advised Mr. Boardman to take a plea
that resulted in a substantial benefit to Mr. Boardman.  By
pleading guilty, Mr. Boardman avoided having the government
supersede the indictment and facing two mandatory minimum terms
of imprisonment of 15 years and an increase in the maximum term
of imprisonment under Count One.  Ultimately, Mr. Boardman
received a sentence significantly below the maximum and had the
remaining charges against him dropped.

Furthermore, Mr. Boardman cannot show prejudice under
<u>Strickland</u> for the same reasons as those set forth above for his
first objection.  <u>See</u> <u>Foster</u>, 68 F.3d at 88.  To restate them

briefly, Mr. Boardman was properly informed by the court of the sentence he faced during his Rule 11 hearing, and he affirmed, under oath, his understanding of the potential consequences of pleading guilty.  Mr. Boardman was offered no leniency besides that which the plea agreement contained, and the agreement was silent as to the sentencing guidelines.  Mr. Boardman was aware of this and expressed his concern to the court.  He nevertheless chose to proceed.  In the end, the sentence Mr. Boardman received was within the range of which he was informed in the plea agreement and also at his plea hearing.  Moreover, in this case, it matters not whether "ice law" or methamphetamine actual was used with respect to the 46.19 grams of 78 percent pure methamphetamine.  Whatever disagreement there was between the government and Mr. Campbell respecting the use of actual or mixture to convert the 46.19 grams of 78 percent pure methamphetamine, the drug weight attributable to his relevant conduct with Avante Jones, discussed at length below, was sufficient to put Mr. Boardman in the at least 1,000 kilograms but less than 3,000 kilograms range for sentencing, and the 46.19 grams of 78 percent pure methamphetamine did not raise Mr. Boardman's base offense level, which remained at 30.

Mr. Boardman cannot demonstrate prejudice under Strickland under these circumstances, nor can he show that his

plea was not voluntary and knowing.  Accordingly, the court
adopts the magistrate judge's finding and recommendation as to
this ground.

        2. Post-Plea Grounds and Objections

        Next, Mr. Boardman objects to the magistrate judge's
recommendation to dismiss Ground Three which concerns Mr.
Campbell's alleged failure to suppress Mr. Jones's statements
about drug weights.  Inasmuch as the context for this ground and
objection requires further explanation, the court relates that
which occurred at sentencing with respect to Mr. Jones's
statement.

        At Mr. Boardman's sentencing hearing, the government,
relying on the PSR, sought to attribute as relevant conduct
1,417 grams of methamphetamine (2,834 kilograms, as converted)
based on statements made by Mr. Jones to police investigators.
Tr. 8:3-5, ECF No. 93.  Mr. Jones did not testify at the
sentencing hearing. Id. 8:8-12.

        Mr. Campbell initially objected to the inclusion of
Mr. Jones's statement in the PSR on grounds that he did not
believe the amount of drug weight was accurate.  Id. 7:5.  The
parties each discussed the effect on the guidelines range if the
1,417 grams were excluded, although the government maintained

that the weight was properly attributed to Mr. Boardman.  Id.
13:21-17:4.  Mr. Campbell stated that Mr. Boardman would agree
to a guideline range of at least 400 kilograms but less than 700
kilograms total, that is, a range excluding Mr. Jones's
attribution to him, and maintained the objection that this
quantity should be considered methamphetamine mixture.  Id.
17:7-18:2.  Mr. Boardman and Mr. Campbell then conferred off the
record, whereupon Mr. Campbell stated that Mr. Boardman would
agree to 639 kilograms total, yielding an offense level of 26,
plus an additional 2 for a firearm enhancement, for a total
offense level of 28.  Id. 18:3-16.  The government confirmed
that, less Mr. Jones's statements, the total converted drug
weight amount would be 639 kilograms, although it did not agree
to this amount.  Id. 16:7-13.  A discussion between Mr. Campbell
and the government ensued, followed by a discussion between Mr.
Campbell and Mr. Boardman.  Id. 18:21-19:8.  Following this
discussion, Mr. Campbell, apparently at the insistence of Mr.
Boardman, again objected to any amount - converted or not -
being attributed to Mr. Boardman based on Mr. Jones's
statements.  Id. 19:7-13.

        The court, understanding this objection to have
already been made and having entered upon a discussion of what
the amount of relevant conduct would be if the 1,417 grams were

not attributed to Mr. Boardman, asked Mr. Campbell what amount

the defense would propose instead.  Tr. 19:14-19.  Mr. Campbell

countered with "60 grams of methamphetamine mix."[2]  Id. 19:16-22.

The government steadfastly maintained that the entire 1,417

grams should be attributed to Mr. Boardman, whereupon the court

proposed a recess for the parties to determine what, exactly,

was at issue and whether evidence was needed to support the

parties' differing positions.  Id.  19:25-20:25.  Defense

counsel and the government again conferred, whereupon Mr.

Campbell stated that "we will have agreed numbers when we come

back or tell you where we disagree."  Id. 21:1-6.

Early in the hearing, Assistant United States Attorney

Inman made known the unavailability of Mr. Jones due to his

refusal to testify.  Respecting Mr. Jones, Mr. Inman stated,

"Mr. Jones told the United States he would not be cooperating;

he would not testify."  Id. 8:9-11.  Mr. Jones had testified

before the grand jury on April 24, 2018 that he had supplied Mr.

---

[2]        Although the proposed amount of 60 grams is puzzling,
as best the court can discern, Mr. Campbell meant 60 kilograms
of converted drug weight attributable to Mr. Boardman through
Mr. Jones.  Sixty kilograms of converted drug weight, when added
to the 639 kilograms of converted drug weight already proposed
by Mr. Campbell and under discussion at this point in the
sentencing proceeding, would have yielded 699 kilograms of total
converted drug weight, which would have kept the total converted
drug weight within the range of at least 400 kilograms but less
than 700 kilograms for a base offense level of 26.

Boardman with "over a kilogram" of methamphetamine during a five-to-six month period.  Later in the hearing, the government stated that the parties had "made crystal clear where the disagreement lies in the PSR. And we can clarify that for the Court."  Id. 69:14-19.  The following exchange occurred:

> Mr. Inman: Judge, my understanding is that the defense does not question that Mr. Jones made those statements; therefore, my witness testimony would not be relegated just to those statements of the quantity. The defense doesn't object that that proffer occurred and that that -- or that that number was provided by Mr. Jones.
>
> I think the defense's objection solely lies in the amount actually received by the defendant.
>
> Court: Well, let me ask what you make of that, Mr. Campbell.
>
> Mr. Campbell: Well, that's correct.  I mean, we disagree with the amounts Mr. Jones has stated in two different forms.

Id. 70:10-23.

After the court again confirmed that the defense objected to the quantities, not the existence of statements made by Mr. Jones, the government called Sergeant Eric C. Eversole, an officer with the Boone County Sheriff's Office.  Id. 71:4-72:25.  Officer Eversole testified that he spoke with Mr. Jones during a proffer interview on September 1, 2017.  Based on Mr. Jones's statements about the amount he typically sold Mr. Boardman during a certain period of time, Officer Eversole

estimated that Mr. Jones had supplied Mr. Boardman with approximately 1,417 grams of methamphetamine. Id. 78:5-12. Mr. Campbell cross-examined Officer Eversole, questioning how he arrived at this estimate and how it differed from testimony Mr. Jones gave to a federal grand jury of "over a kilogram" of methamphetamine.

Ultimately, the court found more credible Mr. Jones's grand jury testimony, and attributed 1,000 grams of methamphetamine to Mr. Boardman on the basis of the "over a kilogram" testimony. Id. 179:15-180:2. The converted drug weight ultimately attributed to Mr. Boardman from Mr. Jones's grand jury testimony was 2,000 kilograms out of a total converted drug weight of 2,735.41 kilograms. Id. 179:15-181:3.

Mr. Boardman's objection boils down to this: defense counsel should not have permitted any testimony or other evidence of statements by Mr. Jones to be presented to the court. See Objections at 3. As to Officer Eversole's testimony, Mr. Boardman states that Mr. Campbell advised him "that all we were agreeing to do was to let Eversole say he had a statement from Avante Jones." Id. To this Mr. Boardman agreed, "but not for it to be communicated by [a] 2nd party to court." Id. As to the grand jury testimony Mr. Campbell used to attack the credibility of Mr. Jones's statement to Officer

Eversole, Mr. Boardman maintains that "he had no reason to believe the grand jury testimony was valid or accurate." Id. at 3-4.  Mr. Boardman asserts that he was misled into this occurring and that Mr. Campbell refused to "petition the court to remove said persons evidence from the hearing." Id. at 4.

To demonstrate ineffective assistance of counsel at sentencing, there must be shown a reasonable probability that, but for counsel's unprofessional errors, the sentence would have been more lenient. Glover v. United States, 531 U.S. 198, 202-04 (2001).  As the record shows, Mr. Campbell and Mr. Boardman conferred a number of times with each other at the sentencing hearing.  The fact that Mr. Campbell did not pursue exactly the course Mr. Boardman would have had him to do is not enough to show deficiency in representation.  Whatever Mr. Boardman may have wished about the evidence the court could or could not consider, the court was entitled to consider Mr. Jones's grand jury testimony in view of Mr. Jones's unavailability due to his refusal to testify, barring a serious question about its reliability, which was dispelled by the Eversole testimony.  Mr. Campbell elected to attack the 1,417 grams figure in the PSR by suffering Officer Eversole to testify in order to demonstrate that Mr. Jones's statements were not credible inasmuch as he stated, under oath to the grand jury, something else; namely,

"over a kilogram" supplied by Mr. Jones to the defendant over a five-to-six month period.

Mr. Campbell, an experienced practitioner, made the kinds of strategic choices with respect to Mr. Jones's statements that are entrusted to legal counsel.  He sought to exclude the 1,417 grams entirely.  Then he suggested instead that "60 grams (sic, kilograms) of methamphetamine mix" would be agreeable.  Ultimately, for reasons the court will not speculate as to, he opted to attack the credibility of Mr. Jones by highlighting differences between the statements he made to police investigators, on September 1, 2017, and to a grand jury on April 24, 2018.  Mr. Campbell attempted to demonstrate the unreliability of Mr. Jones's statements and thereby undermine the basis for including his statements in the PSR.  Under Strickland, a strategic choice made upon "investigation of law and facts relevant to plausible options," is "virtually unchallengeable."  466 U.S. at 690-91.  This court cannot conclude now, with the benefit of hindsight, that Mr. Campbell's decisions constitute "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id. at 687.  Accordingly, the court overrules Mr. Boardman's third objection, and adopts the magistrate judge's finding and recommendation as to this ground.

Mr. Boardman's fourth objection relates to the testimony of John Edward Roach, a former correctional officer at the South Central Regional Jail, and Brian Roscoe, a special agent with the Drug Enforcement Agency.  At sentencing, the government called Mr. Roach and Agent Roscoe regarding acceptance of responsibility by Mr. Boardman.  The pertinent facts are as follows: While in custody, after having signed the plea agreement but before his plea hearing, Mr. Boardman paid $2,000 to Mr. Roach to smuggle contraband into jail.  Mr. Roach successfully did so one time before being arrested on his second attempt.  In connection with an investigation into Mr. Roach's activities, Agent Roscoe interviewed Mr. Boardman at South Central Regional Jail.  Mr. Boardman alleges that Agent Roscoe threatened to make it appear as if Mr. Boardman were cooperating with law enforcement, thus placing him at risk of retaliation from other inmates, if Mr. Boardman did not actually agree to cooperate.  Mr. Boardman refused to cooperate.  Mr. Roscoe testified about the investigation into Mr. Roach and Mr. Boardman.  On cross-examination, Agent Roscoe denied ever threatening Mr. Boardman.  Tr. 62:11-63:4.

Mr. Boardman claims that Mr. Campbell was in possession of a video which would have corroborated his version of events, at least with respect to threats made to him, and

that Mr. Campbell failed to play this tape.  Mr. Boardman
objects to the magistrate judge's finding that failure to play
the video did not constitute ineffective assistance of counsel
and objects also to the government's "use of violent threats by
those appointed to represent it."  Objections at 4-5.  With
respect to the latter objection, Mr. Boardman has waived his
right to collaterally attack his sentence except for claims of
ineffective assistance of counsel.  This objection is squarely
within the scope of the waiver and is, therefore, overruled.

Respecting the former objection, Mr. Boardman must
show a reasonable probability that, but for counsel's
unprofessional errors, he would have received a more lenient
sentence.  Glover, 531 U.S. at 202-04.  Mr. Boardman fails to
make the requisite showing as to the first prong under
Strickland.  Mr. Campbell's decision not to play the tape is a
"virtually unchallengeable" strategic decision.  466 U.S. at
690-91.  There is an obvious reason for doing so: the tape may
have tended to undermine any claim by Mr. Boardman that he had
accepted responsibility for his criminal conduct.  In the taped
interview, Mr. Boardman apparently admits to being in possession
of contraband, which he claims he simply "found" in jail.
Moreover, Mr. Boardman's demeanor, if it matched the testimony
of Agent Roscoe, may have further indicated his involvement in

the smuggling scheme.   Inasmuch as Mr. Boardman cannot
demonstrate unprofessional errors on the part of counsel, the
court overrules his objection and adopts the magistrate judge's
finding and recommendation as to this ground.

Mr. Boardman does not object to the magistrate judge's
finding and recommendation with respect to Ground Five.   Finding
no error, the court adopts the magistrate judge's finding with
respect to Ground Five.

Turning to Mr. Boardman's fifth objection respecting
Ground Six, Mr. Boardman takes issue with Mr. Campbell's
"failure . . . to file final objections to the PSR."   Objections
at 5.   Mr. Boardman argues that he would not have accepted the
plea deal "on the basis of Avante Jones['s] statements being
admitted."   Id.   Mr. Boardman would not have had access to the
PSR prior to signing his plea agreement, so the court will not
consider whether this supposed error of counsel affected the
knowing and voluntary nature of Mr. Boardman's plea.

Mr. Campbell made two written objections prior to
sentencing.   The first concerned a recommendation in the PSR
that Mr. Boardman should not receive credit for acceptance of
responsibility.   Tr. 6:1-7.   The second concerned drug
quantities attributed to Mr. Jones.   Mr. Campbell also made an
oral objection, already discussed, respecting the use of

methamphetamine actual to calculate drug weights based upon
laboratory analyses the defense did not have available to it
when the plea agreement was offered by the government.  This
third objection was not written inasmuch as Mr. Campbell stated
that he had not had the necessary information until only shortly
before the hearing.  Id. 11:5-12:17.  Arguments or witness
testimony were heard as to each of these three matters.

Mr. Boardman cannot show deficient performance
inasmuch as counsel did make objections and argued them at
sentencing.  That counsel did not prevail does not show
deficiency.  Furthermore, it is not clear "what critical
decisions" Mr. Boardman was deprived of given that Mr. Campbell
objected to precisely the parts of the PSR Mr. Boardman now
finds objectionable.  Mot. at 13, ECF No. 103.  The subject
matter of each of these three aspects of the PSR and sentencing
hearing having already been discussed at length above, the court
will not revisit each yet again.  The court overrules Mr.
Boardman's fifth objection and adopts the magistrate judge's
finding and recommendation respecting Ground Six.

Mr. Boardman does not object to the magistrate judge's
finding and recommendation with respect to Ground Seven.
Finding no error, the court adopts the magistrate judge's
finding with respect to Ground Seven.

Mr. Boardman's sixth objection regarding Ground Eight raises the same arguments as Ground Three.  Accordingly, the court overrules Mr. Boardman's objection and adopts the magistrate judge's finding with respect to Ground Eight.

Lastly, Mr. Boardman's seventh objection concerns Ground Nine.  Mr. Boardman claims that Mr. Campbell "did not consult [with him] about appeal, [and that] a movant reserves the right to be involved in such instances and defense [counsel's] effort at appeal was pathetic to the point of appellate [court's] notice."

To prevail on this claim of ineffective assistance of counsel, Mr. Boardman must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the [appellate] proceeding would have been different." Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000).

The court will accept Mr. Boardman's version of events.  Mr. Boardman knew Mr. Campbell was working on his appeal.  When Mr. Campbell informed Mr. Boardman of this, he stated that Mr. Boardman could contact him with any questions. After that, their communication appears to have ceased, although not for lack of trying on Mr. Boardman's part.  When Mr. Boardman next received an update about his case, it was from a government notice informing him that his appeal had been denied.

36

In short, what Mr. Boardman says he wanted — the right to collaborate on the appellate briefing — he did not get.

Mr. Boardman's claim fails because the right Mr. Boardman aims to vindicate is not a right protected by the Sixth Amendment. A criminal defendant has the right to decide whether to appeal. Roe v. Flores-Ortega, 528 U.S. 470, 478 (2000). Mr. Boardman plainly wished to appeal, and he knew that Mr. Campbell was working on his appeal. The level of cooperation Mr. Boardman wished for is not guaranteed by the Sixth Amendment. See Smith v. Cox, 435 F.2d 453, 458 (4th Cir. 1970) (holding that "however desirable" consultation with an indigent client regarding appellate arguments "may be, we cannot say that it is [] required by the Constitution"), vacated on other grounds by Slayton v. Smith, 404 U.S. 53 (1971); Brown v. United States, Civ. No. 4:17-cv-72, 2018 WL 9990480, *4 (E.D. Va. Sept. 4, 2018) ("[C]ounsel's failure to consult with Petitioner, without more, does not satisfy Petitioner's burden to show that appellate counsel's assistance fell 'outside the wide range of professionally competent assistance.'") (quoting Strickland, 466 U.S. at 690). Mr. Campbell, as his counsel at his plea hearing and at sentencing, was no doubt already familiar with the record and the limited grounds for appeal available to Mr. Boardman.

To be sure, the appellate brief is not lengthy, and it makes a single argument: that Mr. Boardman's sentence was unreasonable.  In light of the waiver of appellate rights executed by Mr. Boardman, it is not surprising that Mr. Campbell's brief was succinct.  Mr. Boardman's contention that the appellate court somehow noticed that the appeal was "pathetic," is unsupported.  The Fourth Circuit's opinion was to the point:

> "Upon review of the plea agreement and the transcript of Fed. R. Crim. P. 11 hearing, we conclude that Boardman knowingly and voluntarily waived his right to appeal and that the issue Boardman seeks to raise on appeal falls squarely within the scope of his waiver of appellate rights."

United States v. Boardman, No. 19-4606.

Mr. Boardman does not now identify what meritorious arguments Mr. Campbell failed to present.  Mr. Boardman can show neither deficiency of performance nor prejudice under Strickland.  Nor does he show that he had a basis for overcoming his agreed waiver of the right to appeal.  Accordingly, the court overrules his seventh objection, and adopts the magistrate judge's PF&R on this point.

IV. Conclusion

Having reviewed de novo those portions of the PF&R to which objections were filed, and having reviewed the remainder of the PF&R and finding no error, the court orders as follows:

1. Mr. Boardman's objections to the PF&R be, and hereby are, overruled.

2. An evidentiary hearing is not required.

3. The magistrate judge's PF&R is adopted and incorporated herein except that the Jones-related relevant conduct found at sentencing was 1,000 grams of methamphetamine rather than 1,417 grams (2,000 kilograms of converted drug weight).

4. The United States' motion to dismiss be, and hereby is, granted;

5. This action be, and it hereby is, dismissed.

The Clerk is requested to transmit this order to all counsel of record, any unrepresented parties, and the United States Magistrate Judge.

ENTER: February 15, 2023

John T. Copenhaver, Jr.
Senior United States District Judge